# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| ANGIE HARRIS, | ) |
| Plaintiff, | ) |
| v. | ) Case Number: 4:13-cv-02039-JHE |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Angie Harris ("Harris") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  Harris timely pursued and exhausted her administrative remedies.  The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Harris was a forty-three year old female at the time of the Administrative Law Judge ("ALJ") decision. (Tr. 21).  Harris has up to a ninth-grade education and previously worked as a psychiatric aide, poultry weigher, production machine tender, car wash attendant, and harvest worker. (Tr. 20-21).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 11).

1

Harris filed her application for a period of disability, DIB, and SSI on November 22, 2010, alleging an initial onset date of November 7, 2007. (Tr. 9). The Commissioner denied Harris's application, (tr. 62-65), and Harris requested a hearing before an ALJ, (tr. 83-84). After a hearing, the ALJ denied Harris's claim on August 30, 2012. (Tr. 22). Harris sought review by the Appeals Council, but it declined her request on September 11, 2013. (Tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. On November 6, 2013, Harris initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine, in sequence:

   (1)   whether the claimant is currently employed;
   (2)   whether the claimant has a severe impairment;
   (3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
   (4)   whether the claimant can perform his or her past work; and
   (5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ noted the issue of Harris's disability on or prior to February 12, 2010, was final under the doctrine of res judicata and administrative finality. (Tr. 11). The ALJ also found Harris met the insured status requirements of the Social Security Act through December 31, 2010, and that Harris had not engaged in substantial gainful activity since November 7, 2007, the alleged onset date of her disability. (Tr. 11-12). At Step Two, the ALJ found Harris has the following severe impairments: sciatica, hepatitis C, biliary dyskinesia, recurrent bronchitis, tobacco abuse, depression, anxiety, and posttraumatic stress disorder. (Tr. 12). At Step Three, the ALJ found Harris does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Before proceeding to Step Four, the ALJ determined Harris's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. §

404.1545(a)(1).  The ALJ determined Harris has the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c), except she cannot climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and must avoid concentrated exposure to smoke, fumes, dust, and gases, as well as hazardous machinery and unprotected heights.  (Tr. 14).  She is also limited to the performance of simply, routine, repetitive tasks in a stable, predictable environment where there is no contact with the general public and minimal changes in the routine.  (*Id.*).  She can work in proximity to co-workers but would be best working alone.  (*Id.*).

At Step Four, the ALJ determined Harris is unable to perform any past relevant work.  (Tr. 20).  At Step Five, the ALJ determined, based on Harris's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Harris could perform.  (Tr. 21).  Therefore, the ALJ determined Harris has not been under a disability and denied Harris's claim.  (Tr. 22).

## V. Analysis

Although the Court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding."  *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).  The Court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]."  *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Harris failed to demonstrate a disability.  Harris contends the ALJ erred by failing to further develop the record on "the possible relationship between [Harris]'s unexplained frequent nausea and vomiting and her

severely anxious and depressed emotional state." (Doc. 10 at 16-17).  She further contends the ALJ failed to properly consider all of her impairments or to consider them in combination.  (*Id.* at 17).  Last, she contends the ALJ's decision is not supported by substantial evidence because the ALJ gave little weight to the opinion of the only physician to provide an RFC report.  (*Id.* at 18).

### A. The ALJ Did Not Fail to Properly Develop the Record

Harris supports her assertion the ALJ failed to develop the record by summarizing the evidence for her anxiety issues and alleged nausea and contending there could possibly be a connection that was not addressed by the ALJ or any of the doctors. (Doc. 10 at 15-17).  Harris submits no authority for the proposition an ALJ must inquire into every potential medical diagnosis.  "It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (internal citations omitted).  An ALJ's responsibility to develop the record cannot require the ALJ to order a consultative examination on an issue until "the plaintiff has satisfied his or her burden to provide objective evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Bryant v. Barnhart*, 36 F. App'x 405, 407 (10th Cir. 2002) (internal quotation marks omitted).  "[T]he ALJ is not required to order an examination if it is not necessary to enable the ALJ to make a disability determination." *Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006).

Harris admits none of the doctors in the record addressed the potentially psychological nature of the nausea, (doc. 10 at 16-17); in fact, Dr. Adam Alterman's report suggests the nausea and vomiting are second to her diagnosed biliary dyskinesia, (tr. 433).  Harris does not explain

why she failed to fulfill her burden of producing evidence to support her claim. The ALJ considered all of the medical records and physician reports in the record and found they did not support Harris's allegations of disabling nausea, (tr. 19), and Harris does not point to anything in the record that indicates a reasonable need for further discovery on the nausea issue. The ALJ did not fail to properly develop the record.

### B. The ALJ Did Not Fail to Properly Consider All of Harris's Impairments in Combination

Harris contends that, "[i]n the alternative, this is a case where the ALJ has failed to properly consider all of the claimant's impairments or has failed to consider them in combination as required by this circuit." (Doc. 10 at 17). She argues this contention is supported by the assertion "the ALJ has erred by not discussing the claimant's unexplained frequent nausea and vomiting at all." (*Id.*). She goes on to note that, "if [Harris]'s unexplained frequent nausea and vomiting is considered under the paragraph B' criteria, the claimant should have a marked limitation under this domain. [Harris]'s frequent nausea and vomiting would also warrant a finding of marked limitation under the domains of social functioning and concentration, persistence, and pace." (*Id.* at 17-18). However, the first statement is simply not true, and the others are merely conclusory disagreements with the ALJ's decision.

The ALJ addressed the complaint of nausea when determining Harris's allegations were not credible to the extent they were inconsistent with the previously stated residual functional capacity. (Tr. 19). Non-credible evidence would necessarily not be considered singly or in combination with evidence of other impairments. If Harris means the ALJ has not addressed the nausea in the context of the asserted psychological connection, the ALJ cannot be faulted for failing to consider an ailment not addressed in any way by the medical records and opinions. *See* Section V.A., *supra*. The ALJ states in his decision that "[t]he severity of the claimant's mental

impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether 'paragraph B' criteria are satisfied." (Tr. 12.) Harris has presented nothing to undermine that statement. *See Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (accepting the ALJ's statement he had considered the impairments in combination).

### C. The ALJ Did Not Err by Failing to Obtain Additional Physical Capacity Evaluations

Last, Harris relies on *Rogers v. Barnhart*, No. 3:06-CV-0153-JFG (N.D. Ala. Oct. 16, 2006), for the proposition "an ALJ must generally base his residual functional capacity determination on the physical capacities evaluation by a physician." (Doc. 10 at 18). However, Harris glosses over the entire issue with the word "generally."

In *Rogers*, the court cited to *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996), for the proposition an ALJ could make a judgment as to the RFC "where so little physical impairment is involved that the effect would be apparent to a lay person" but "[i]n most cases . . . the alleged physical impairments are so broad, complex, and/or ongoing that a physician's evaluation is required." No. 3:06-CV-0153-JFG, doc. 13 at 5. Harris merely asserts the ALJ may not rely on the medical records and must have a physical capacity evaluation from a physician he finds credible before the ALJ may establish an RFC. (Doc. 10 at 18). The Eleventh Circuit, however, has addressed the *Manso-Pizarro* reasoning and, although not specifically adopting it, re-emphasized the complexity requirement for it to apply, noting "the ALJ did not 'play doctor' in assessing [the claimant]'s RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [the claimant]'s RFC." *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014). In the end, "[t]here is no bright line rule about when an ALJ must request [a medical source statement]. . . . The ultimate question in each

case is whether substantial evidence supports the ALJ's RFC assessment." *Wallace v. Colvin*, No. 2:12-CV-578-VEH, 2013 WL 1346559, at *4 (N.D. Ala. Apr. 1, 2013).

Here, the ALJ relied on a mental capacity evaluation from Dr. Estock, (tr. 18), so Harris's argument must be based on lack of a physical capacity evaluation. Very few of Harris's objective impairments, however, are physical, (tr. 12), and she asserts only that Dr. Alterman's evaluation (given little weight by the ALJ) showed her subjective pain was disabling, (doc. 10 at 18). Harris has presented no argument her objective physical impairments require a separate physical capacity evaluation, and the ALJ properly applied the Eleventh Circuit pain standard to her subjective evaluations, *see Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002), finding Harris's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment," (tr. 19). The ALJ supported that statement with references to the evidence in conflict with Harris's allegations of disabling pain (*i.e.*, the medical evidence did not support pain of the intensity she alleged and indicated instead that her pain was effectively controlled by "medication and/or medical advice recommendation compliance"). (*Id.* at 19-20). The ALJ credited the psychological opinion evidence of Drs. Estock and Nichol's consultative reports and the physical opinion evidence of Dr. Valentine in the medical records. (Tr. 18-19). The ALJ's findings regarding Harris's pain are supported by substantial evidence, and Harris points to nothing to indicate the ALJ improperly "played doctor" when he should have obtained an additional physician's opinion.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative

record and memoranda of the parties, the decision of the Commissioner of Social Security denying Harris's claim for a period of disability, disability insurance benefits, and supplemental security income is **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE.** A separate order will be entered.

    DONE this 2nd day of February 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE